2025 IL App (2d) 250263-U
No. 2-25-0263
Order filed September 29, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No.   23-CF-2689 |
| CALVIN M. COOKE, | ) ) | Honorable Julia A. Yetter, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Trial court's detention decision affirmed, where the evidence that defendant, who was previously convicted of multiple felonies, illegally sold firearms (including one known to be stolen) to an undercover officer, sufficed to establish dangerousness, and where conditions short of detention would not reasonably mitigate defendant's risk to the community, given that EHM would not prevent defendant from selling weapons from his home, as he had allegedly done, and he was not likely to obey conditions of release.

¶ 2   Defendant, Calvin M. Cooke, appeals from the trial court's order denying his pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023).   See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of Public Act 101-652); *Rowe v. Raoul*, 2023

IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). For the following reasons, we affirm.

¶ 3                                          I. BACKGROUND

¶ 4                                A. Charges and Petition to Detain

¶ 5      On December 12, 2023, defendant was charged with "gunrunning" (*i.e.*, unlawful sale or delivery of firearms) (720 ILCS 5/24-3A(a) (West 2022)), possession of a stolen firearm (*id.* § 24-3.8(a)), unlawful sale or delivery of a stolen firearm (*id.* § 24-3(A)(1)), and unlawful possession of weapons by a felon (*id.* § 24-1.1(a)). An arrest warrant issued that same day. On April 24, 2024, defendant was indicted, and the State amended the charges to include the offense of armed habitual criminal (*id.* § 24-1.7(a)).

¶ 6      The arrest warrant was served on March 18, 2025 (the State proffered that defendant had been extradited from another state). On April 19, 2025, the State petitioned to deny defendant pretrial release, alleging that his pretrial release posed a real and present threat to the safety of any person and the community. 725 ILCS 5/110-6.1(a)(1), (6) (West 2022). The petition further noted that defendant had previously served time in the Department of Corrections for multiple felonies, including three convictions for residential burglary (in 2001, 2006, and 2010), two for retail theft (2005 and 2006), one for theft (2006), and one for unlawful possession of a controlled substance (2003). In addition, defendant had two misdemeanor convictions for driving while under the influence.

¶ 7      On April 25, 2025, the court held a hearing on the State's petition to detain. In its proffer, the State introduced into evidence the police synopsis from the incidents at issue. According to the synopsis, on or about September 26, 2023, Detective Nathan Linden from the Elgin police department acted in an undercover capacity to communicate with defendant about purchasing two

rifles. Linden met with defendant in front of defendant's residence on Pinehurst Avenue in Elgin. He paid defendant $400 for the two rifles. The synopsis reported that the transaction was video recorded. Later, on November 7, 2023, Linden again communicated with defendant about purchasing another rifle for $600, and defendant provided Linden with a photograph of the rifle. That day, Linden picked up defendant from his residence and drove him to another location in Elgin. During the drive, defendant advised Linden that the rifle was stolen during a burglary. Linden gave defendant $600, defendant exited the vehicle and obtained the rifle from another individual, and then he returned to the vehicle. Defendant provided Linden with a rifle that possessed a serial number for a weapon that was stolen in Naperville. Linden dropped off defendant at his residence. The transaction was also purportedly video recorded. In addition to the synopsis, the State's proffer included defendant's criminal history, as related in the petition to detain.

¶ 8 Defendant's counsel proffered that defendant resided at the Pinehurst Avenue residence with his mother and father, as he worked as a paid caretaker for his father, who was in a wheelchair. Defendant had been caring for his father for 10 years. Defendant carried a valid driver's license and was in recovery for drug addiction.

¶ 9 In argument, the State emphasized that defendant delivered firearms to an undercover officer, who defendant did not know was an officer and, thus, could have been anyone in the community. Further, defendant should not, based on his criminal history, have possessed those firearms, and knew he should not possess them, but still did not follow the law. Although defendant suggested that he had been in drug rehabilitation, the court file reflected that he was extradited "from another state" and that the warrant was outstanding for a considerable period. The State argued further that no conditions would mitigate defendant's alleged dangerousness, as

electronic home monitoring (EHM) would show only where he was; it would not ensure defendant's presence in court or create a safe environment for the public.

¶ 10    Defense counsel responded that, although defendant's criminal history was "substantial," the most recent arrest was for a 2010 burglary and, overall, the history was nonviolent.    Counsel argued that conditions such as EHM and drug testing could be imposed to mitigate defendant's alleged threat to the community.

¶ 11    The court granted the State's petition.    The court found, based on the petition and proffered evidence of defendant's criminal history, that the proof was evident and presumption great that defendant committed the detainable offenses.    It noted that it had considered the statutory factors for determining dangerousness (725 ILCS 5/110-6.1(g) (West 2022)), specifically, the nature and circumstances of the offense, and defendant's character and history. The court found that, despite his multiple felony convictions and sentences, the allegations concerned weapons offenses, which suggested that defendant had ready access to weapons, when he was well aware both that he was not legally permitted to possess weapons and that the firearm he was reselling had been stolen.    The court found that defendant was selling weapons in an "other than lawful manner," without knowing whether the purchaser was lawfully able to possess weapons.    "So ultimately weapons are being distributed illegally throughout the community with the assistance of [defendant].    I find this does make him a real and present threat to the community."    Finally, the court recognized that the statutory intent was mitigation, not elimination, of threat, but it was concerned about defendant's "non-compliance with the societal norms and conditions under the law.    He is simply not to possess weapons period.    And what I have here is evidence that he's done so on multiple occasions."    As such, the court found defendant's history of non-compliance with terms and conditions of law rendered it doubtful that

he would follow court-ordered conditions. Further, even if the court were to order EHM and defendant were to follow those conditions, the court believed that it would not prevent him from engaging in weapons sales from his home, an act which the charges alleged he performed. The court found, therefore, that confining defendant to his home would not mitigate the criminal activity that constituted the threat to community safety. Accordingly, it granted the State's petition to detain.

¶ 12                    B. Motion for Relief and Ruling

¶ 13    On June 13, 2025, defendant moved for relief, arguing that the evidence was insufficient to establish that he committed the charged offenses, in that he is presumed innocent of the charges and, other than the State's oral proffer, the court relied upon the police synopsis, which is based on a lower standard of proof (probable cause) than that required by the hearing (clear and convincing evidence). Further, he argued that the evidence did not establish he was a real and present threat to the community, where the State argued he was a danger based upon the police synopsis and his criminal history, but the court did not give proper weight and consideration to the time that had passed between the alleged offense and defendant's arrest, nor his lack of criminality since the charges were brought. Finally, defendant argued that the State failed to establish that no conditions could mitigate the alleged threat to the community, where the focus is mitigation, not elimination, of risk, and where EHM and other conditions could sufficiently mitigate any threat.

¶ 14    On June 16, 2025, the court held a hearing on defendant's motion for relief. Defendant again noted that his past offenses were nonviolent, 13 years had passed since his last case, and, further, that, for around 15 months from the time of the alleged offenses until his arrest in this case, there was apparently no further criminal activity. As such, defendant argued that he had

established he could comply with court orders and that EHM and other conditions would be appropriate.

¶ 15    The State responded that defendant's history of drug use, coupled with firearms dealing, reflected dangerousness.   It asserted that, while defendant did not have an active conviction for a period, it was not clear that he resided in Illinois the entire time.   Indeed, he had left the jurisdiction and was brought back after the State sought a "governor's warrant."   The State, therefore, argued that detention would best protect the public and ensure defendant's appearance in court.   Finally, it reiterated that defendant had a lengthy criminal history, and it argued that EHM or GPS would merely show where he was while consuming narcotics, dealing firearms, or outside the jurisdiction.

¶ 16    Defendant replied that the State's petition did not pursue a risk of willful flight and, in any event, whether or not he moved out of State did not alter that there was no known criminal activity between 2010 and his arrest in this case.   Moreover, defendant disputed the State's position regarding EHM being valuable only to the extent that it tracks location, but that it cannot prevent crime, arguing that the argument must fail, otherwise no one could be released on EHM, which, "by definition keeps people to their home with exception to a few *** permissions, so that they can get groceries and things like that, but primarily, he would be restricted to his home.   The Sheriff would be able to locate him if he were to leave without those permissions."   Defendant argued that there was insufficient evidence to demonstrate that EHM was inappropriate.

¶ 17    The court denied defendant's motion.   It agreed that willful flight was not alleged in the petition and, therefore, it would not consider argument regarding whether defendant was likely to appear in court.   However, it found that his criminal history precluded his possession of firearms in any capacity and, yet, the allegations reflected that on two separate occasions he was able to

provide multiple firearms for sale within the same day that they were requested, which suggested that he had ready access to weapons that he was not lawfully allowed to possess. The court agreed that defendant's criminal history was nonviolent, but it found it remained relevant in that his convictions for residential burglary reflected that he had invaded the sanctity of people's homes, which potentially placed community members at risk. It found the current charges reflected an escalation in offenses, because the alleged criminal behavior now involved the use and possession of firearms, which was a statutory factor the court could consider in assessing dangerousness. Again it found that defendant presents a real and present threat to the community at large.

¶ 18    As to conditions short of detention, the court acknowledged that, although EHM does allow some movement, the monitoring of movement "in the right case" could nevertheless be a deterrent to that individual engaging in criminal activity. However, the court continued, EHM would be effective only if defendant complied with the conditions attached thereto, and, therefore, it must consider whether defendant would likely comply with imposed conditions. Here, the court found, the defendant was alleged to have performed the first firearm sale from his home, so EHM would not effectively prevent that behavior. In addition, the court noted that defendant's "lengthy" criminal history and the evidence reflected that defendant historically has not followed the rules and norms of society and does not follow the law, which suggested to the court that he would not likely comply with release conditions. As such, it did not find that there were conditions short of detention that would mitigate the threat defendant posed to the community.

¶ 19    On June 24, 2025, defendant filed a notice of appeal. The Office of the State Appellate Defender filed a memorandum on defendant's behalf pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024). The State submitted a memorandum opposing defendant's appeal.

¶ 20                                    II. ANALYSIS

¶ 21    Pretrial release is governed by article 110 of the Code.   725 ILCS 5/110 (West 2022).

Under the Code, as amended, all persons charged with an offense are eligible for pretrial release,

and a defendant's pretrial release may be denied only in certain statutorily limited situations.   *Id.*

§§ 110-2(a), 110-6.1(e).   As relevant here, upon filing a verified petition requesting denial of

pretrial release, the State has the burden to prove by clear and convincing evidence that the proof

is evident or the presumption great that the defendant has committed a detainable offense (*id.*

§ 110-6.1(e)(1)), that the defendant's pretrial release poses a real and present threat to the safety

of any person or the community (*id.* § 110-6.1(e)(2)), and that no condition or combination of

conditions can mitigate that risk (*id.* § 110-6.1(e)(3)).   "Evidence is clear and convincing if it

leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in

question."   *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 22    We review *de novo* a detention decision where, as here, the parties relied solely on

documentary evidence and no live testimony was presented to the court.   *People v. Morgan*, 2025

IL 130626, ¶¶ 51, 54.

¶ 23    On appeal, defendant argues that the detention order should be reversed because the State

failed to clearly and convincingly prove that he poses a real and present threat to community safety

that could not be mitigated by EHM, where it proffered no evidence that he had used violence in

the past or committed a crime (other than those alleged in these charges) since 2010.   He argues

that the State's suggestion that he committed crimes of which it was unaware, outside of Illinois,

was a "naked attempt to put the burden of proof" on him.   Defendant argues that the evidence

reflected that the danger to the community was not so great as to require his detention, when the

alternative of home detention with EHM is available.   We disagree.

¶ 24    In deciding whether a defendant poses a danger based upon the "specific articulable facts of the case," the court may consider several non-exhaustive statutory factors, such as: (1) the nature and circumstances of the offense, including whether it involved a weapon; (2) the defendant's history and characteristics; and (3) whether the defendant is known to possess or have access to any weapon or weapons.    725 ILCS 5/110-6.1(g)(1)-(2), (7) (West 2022).    Here, the foregoing factors all support detention.    The current charges undisputedly involve weapons.    *Id.* § 110-6.1(g)(1).    Moreover, and as the trial court noted, that defendant was able to sell multiple weapons to an undercover officer the very same day they were requested reflects that he clearly had ready access to weapons.    *Id.* § 110-6.1(g)(7).    Further, specific facts and circumstances of this case also support detention, including that defendant: (1) did not know the purchaser was an officer and, thus, was willing to sell to a member of the community at large; (2) allegedly informed the officer that one of the weapons was stolen, a fact later confirmed, which reflects that defendant understood that the weapon was being sold illegally; (3) conducted a sale from his home, reflecting illegal weapons sales taking place in a residential area; and (4) possessed a criminal history that, while perhaps not violent, rendered it illegal for him to even possess weapons, let alone sell them in any manner, particularly an illegal one.    Given these facts, we find no error in the trial court's finding that defendant poses a real and present threat to the community.

¶ 25    In fact, defendant acknowledges that the State's proffer was sufficient to demonstrate some risk of violence, in that he possessed and sold firearms and is a felon, which presents a higher risk to the public.    However, he again notes that his prior convictions were not for violent crimes. Yet, the trial court acknowledged that fact, as do we, but, as discussed above, other factors reflect that, given the circumstances of this case, a real and present threat of danger exists.    We disagree with defendant that the State shifted the burden by suggesting that he committed crimes outside of

Illinois of which it was unaware. The State did not make this assertion. Rather, when defendant argued that the State had not presented evidence that he committed any other crimes since 2010, the State merely pointed out that defendant was not present in Illinois for a period after 2010. Its comment explained why it might lack evidence one way or the other, but it did not take the extra step of implying that he was committing crimes in other jurisdictions. In any event, while, in certain cases, a lapse of time between an alleged crime and an arrest without further evidence of criminality can be relevant, it certainly does not *preclude* a dangerousness finding. See, *e.g.*, *People v. Ordonez*, 2025 IL App (2d) 250216-U, ¶¶ 20-25. Finally, we wholly reject defendant's suggestion that, although he has access to weapons and is willing to sell them, that does not suggest that he will *himself* commit unlawful violent acts and, thus, that "his alleged firearms trade, to the extent it creates a longer-term risk to the safety to the community, is not a 'real and *present* threat' to safety requiring pretrial detention." (Emphasis in original.) Illegally selling weapons in the manner alleged here *is* the real and present threat.

¶ 26 Next, we reject defendant's assertion that the State failed to establish by clear and convincing evidence that no condition or combination of conditions short of detention could mitigate the alleged danger. Here, defendant argues that he should receive conditions like EHM. He asserts again that the lack of any proven criminality between 2010 and the current charges reflects that the threat is not real and present. Further, defendant notes that statute seeks only to mitigate risk of harm, which simply means to reduce or make something less severe. We disagree. Again, despite his past, the circumstances of the *current* case reflect that defendant allegedly illegally sold firearms from his home, the very place he urges the court to allow him to stay. We do not understand how leaving defendant in the home, where he apparently had ready access to weapons and communicated and executed illegal weapons sales, in any way reduces the threat of

him continuing that very activity. In any event, and as noted by the trial court, proper considerations for assessing whether pretrial release conditions would reasonably mitigate danger to the community include an assessment of "the *likelihood* of compliance by the defendant with all conditions of pretrial release." (Emphasis added.) 725 ILCS 5/110-5(a)(3)(A)-(B) (West 2022). Where defendant has a lengthy criminal history, yet allegedly knowingly sold firearms (including a stolen one) that he was not permitted to possess, we agree that it is unlikely he would comply with court ordered conditions short of detention.

¶ 27                                    III. CONCLUSION

¶ 28    For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 29    Affirmed.