NOTICE
Decision filed 04/07/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 260105-U

NO. 5-26-0105

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | DeWitt County. |
| | ) | |
| v. | ) | No. 25-CF-125 |
| | ) | |
| JONATHAN D. LYON, | ) | Honorable |
| | ) | Karle E. Koritz, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justices McHaney and Clarke concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief are affirmed.

¶ 2    The defendant, Jonathan D. Lyon, appeals the December 2, 2025, order from the trial court of DeWitt County that granted the State's petition to deny pretrial release and the December 10, 2025, denial of his motion for relief and immediate release. For the following reasons, we affirm.

¶ 3                              I. BACKGROUND

¶ 4    On November 25, 2025, the defendant was charged by information with two counts of criminal sexual assault, a Class 1 felony, in violation of section 11-1.20(a)(1)(3) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/11-1.20(a)(3) (West 2024)); three counts of criminal sexual assault, a Class 1 felony, in violation of section 11-1.20(a)(1)(4) of the Criminal Code (720

1

ILCS 5/11-1.20(a)(4) (West 2024)); and two counts of aggravated criminal sexual abuse, a Class 2 felony, in violation of section 11-1.60(f) of the Criminal Code (720 ILCS 5/11-1.60(f) (West 2024)). Counts 1 through 5 alleged that "on, about or between March 23, 2021 to March 22, 2022," the defendant, a person who was 17 years of age or over and who held a position of trust, authority, or supervision in relation to the victim, committed multiple acts of sexual contact and penetration against H.L., who was at least 13 years old but under 18 years old when the acts occurred. Counts 6 and 7 alleged that "on, about or between March 23, 2021 to December 31, 2021," the defendant, a person who was 17 years of age or over and who held a position of trust, authority, or supervision in relation to the victim, committed multiple acts of sexual contact against H.L., who was at least 13 years old but under 18 years old when the acts occurred. On the same day, in a separate case filed in DeWitt County, case No. 2025-CF-124,[1] the defendant was charged with allegations of criminal sexual assault and aggravated criminal abuse involving a different minor victim.

¶ 5    On December 1, 2025, the State filed a verified petition to deny the defendant pretrial release, alleging that the defendant was charged with a detainable offense and that his release posed a real and present threat to the safety of any person or persons in the community, pursuant to section 110-6.1(a)(5) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(a)(5) (West 2024)).

¶ 6    On December 2, 2025, the trial court held a single hearing on the State's petitions to deny pretrial release in case No. 25-CF-124 and case No. 25-CF-125. Over the objection of defense

---

[1]DeWitt County case No. 25-CF-124 is derived from the same investigation, but involved a different victim, J.L. Case no. 25-CF-124 was addressed on appeal in case No. 5-25-1025. Case No. 5-25-1025 was filed on March 20, 2026. The discrepancy in the filing dates of these two cases was due to the defendant filing his notice of appeal in case No. 5-25-1025 on December 12, 2025, and the notice of appeal was filed in the present case on February 5, 2026. The cases are not consolidated on appeal but will be addressed together due to the nature of the investigation and testimony.

counsel, the trial court held a preliminary hearing for each case concurrently with the hearing on the petitions to deny pretrial release.

¶ 7    The State called Detective David Morris of the Clinton Police Department to testify. Morris testified that while investigating the defendant in a case originating from Decatur, Illinois, Morris became aware of potential victims in DeWitt County. Morris interviewed J.L., the victim in case No. 25-CF-124, born in December 2003 and H.L., the victim in the present case, born in March 2005. The two victims are sisters. During the interviews with the victims, J.L. and H.L., both identified the defendant and reported that he committed sexual acts against them. The defendant, born in February 1994 was a youth pastor to J.L. Through that pastoral relationship, he gained access to the family, including H.L. The minors' mother trusted the defendant based on his pastoral role.

¶ 8    Detective Morris testified that the offenses against J.L. occurred between December 1, 2017, and November 30, 2018, when J.L. was 14 years old. J.L. reported that the acts of sexual assault and abuse occurred "under the guise" of church activities, such as distributing pamphlets to promote the church, and while at the church, when the defendant was to be mentoring J.L. as her youth pastor.

¶ 9    The offenses against H.L. occurred between March 23, 2021, and March 22, 2022, when H.L. was 16 to 17 years old. The defendant groomed H.L. and gained her mother's trust as a result of his position in the church. Initially, the defendant began communicating with H.L. through online video games and social media. This communication led to the defendant meeting H.L. in a public place. Morris testified that "From there, the frequency of their meets accelerated, which led to different acts occurring, sexual acts occurring. As she aged, the proximity from her residence increased and these—the type of sexual acts increased." Morris stated that the sexual acts began

with sexual contact, evolving to penetration. During this time, the defendant gave gifts to H.L.—specifically, clothing, a knife, and notes—and he sent voice recordings, messages, or videos daily to H.L. Morris testified that H.L. stated she had returned the majority of the gifts and letters she received to the defendant. Upon the execution of a search warrant in July 2025 these items were located at the defendant's residence. Morris confirmed that he investigated another case involving the defendant and a third victim, which resulted in charges against the defendant in Macon County.

¶ 10    Morris testified that he interviewed the defendant about his relationship with J.L. and H.L. The defendant was hesitant to describe his relationship with J.L. The defendant acknowledged a relationship existed, and he stated that he never did anything that J.L. was not "okay with." The defendant was "more willing" to discuss his relationship with H.L., but he was "very generalized" in describing it. The defendant admitted to various acts but said that H.L.'s age was different from what it actually was. Among the various acts the defendant admitted to included that he participated in "making out" with H.L. The defendant also admitted to an act of penetration with H.L. that occurred at a grocery store in McLean County. At the time of this act, the defendant believed H.L. to be 17 or 18 years old. Morris testified that during the investigation, he discovered the defendant had discussed the age of consent with H.L. The defendant conducted a Google search with H.L. regarding the age of consent in the state of Illinois. H.L. stated in her interview that the defendant acknowledged, during their relationship, that he believed that the age of consent was 17 years old. Morris additionally testified to each charged offense, the type of contact or penetration that was alleged to have occurred, and the location within DeWitt County.

¶ 11    On cross-examination, Morris testified that he was aware the defendant was on pretrial release from the charges in Macon County since July 18, 2025, and that a condition of that release required the defendant to wear an ankle monitor. Morris was unaware of any violations of that

4

release. Morris also testified that H.L. was 17 years old in 2022, when the act of penetration between the defendant and H.L. occurred in McLean County. This testimony completed the State's testimony in support of its petition.

¶ 12     Defense counsel then called Laurie Lyon, but when the trial court inquired as to the subject matter of her testimony, defense counsel stated that she was going to confirm the contents of the pretrial services report. As her testimony was only to confirm the report's accuracy, the trial court, instead, accepted a proffer that the pretrial services report was accurate. Then, defense counsel proceeded to proffer information regarding the defendant. Defense counsel stated that the defendant had lived in the Macon County area his entire life and had some familiarity with DeWitt County as well. The defendant was gainfully employed and had been at the same job for the past four years. He did not have a passport or Real I.D., so he was not a flight risk. The defendant lived with his parents, and they would ensure compliance with any pretrial conditions. The defendant would also submit to any other conditions, such as drug or alcohol testing, a psychological examination, or checking in with the police department. Defense counsel stated that on the pretrial service report, the defendant received two points for community supervision and two points for a pending charge, which counsel argued was duplicative because it was for the same offense.

¶ 13     After the defense counsel's proffer, the State proceeded to argument and asserted that it had proved by clear and convincing evidence that the proof was evident or presumption great that the defendant committed the offenses as alleged. The State further argued that the defendant posed a real and present threat to the two victims in the DeWitt County cases and the victim in the Macon County case. The State noted that the charged offenses were serious, and that the defendant was on pretrial release in Macon County. The State argued that electronic monitoring would not be sufficient to mitigate the risk the defendant posed. A device like an ankle monitor would not report

if the defendant was using social media or other devices to engage in similar grooming behavior, nor would an ankle monitor alert pretrial services of whom was in the defendant's presence. The State requested that the defendant be denied pretrial release. Alternatively, the State requested that if the defendant were released, the trial court impose a no contact order in addition to electronic monitoring.

¶ 14    Next, defense counsel proceeded to argument. While defense counsel agreed that the charged offenses were detainable under the statute, he argued that the State failed to prove, by clear and convincing evidence, that the defendant committed the charged offenses. Defense counsel asserted that the testimony from Morris was a "bare bones" recitation of the allegations contained in the charges themselves. Defense counsel noted that the State did not present any medical evidence, forensic evidence, or eyewitness testimony. Defense counsel indicated that the defendant intended to mount a vigorous defense to the charges, and that the interviews with the defendant "did not produce any confession to any acts in this county." As such, the State failed to prove that the defendant committed a detainable offense.

¶ 15    After responding to the State's argument that the defendant's release posed a real and present threat to the alleged victims, defense counsel then argued the dangerousness standard. Defense counsel claimed that the only statutory factor presented to the court for dangerousness was the nature of the offense itself, and one factor was not enough to justify detention. Further, the defense argued that the defendant did not pose a current real and present danger as the alleged offenses occurred four to eight years ago. Additionally, the defendant had "complied perfectly" with the conditions of pretrial release imposed by the Macon County trial court. The State did not present any evidence that the defendant committed new offenses while on pretrial release. Defense counsel asserted that the only evidence that the defendant committed any offenses was a "bare

6

bones presentation" of the allegations set forth in the charges. Defense counsel stated that the defendant was willing to comply with any pretrial release conditions, as he did in Macon County.

¶ 16    The trial court made an oral pronouncement indicating that it had considered the sworn testimony presented, as well as the proffers and arguments. The trial court agreed with the defendant's argument regarding the pretrial services report being duplicative on some of the points. The court also considered, to the defendant's favor, that he was gainfully employed and pretrial detention could cause him to lose his job.

¶ 17    As to the strength of the evidence necessary for a finding by clear and convincing evidence that the defendant committed the alleged offenses, the trial court noted that the offenses were not a "one-off." The defendant was facing charges of a sexual nature in three cases involving three separate victims. Further, during the investigation, the defendant acknowledged relationships with J.L. and H.L. The trial court found that the evidence showed that the defendant held a position of trust, supervision, or authority over the minors.

¶ 18    Turning to the dangerousness factors, the trial court stated that it considered that the defendant was on pretrial release in Macon County for a similar offense. As to the nature and circumstances of the offenses charged, they "involved multiple victims over a period—over an extended period—of time" with three different victims. As to the age and physical condition of the defendant and the victims, the trial court considered that the offenses occurred when the victims were minor children and the defendant was an adult. The trial court found the defendant to be a danger to the community and the alleged victims.

¶ 19    Regarding whether there were any conditions that could mitigate the danger posed by the defendant, the trial court addressed the defendant's assertion that he would comply with any terms of pretrial release and his argument that he did not pose a danger to the victims due to the age of

7

the charges. The trial court considered that the defendant was not formally charged before and now that he had been charged, the defendant may be "incentivize[d]" to contact or target the alleged victims. The trial court found that no conditions would mitigate the defendant's dangerousness. The trial court granted the State's petition to detain the defendant.

¶ 20    On December 9, 2025, defense counsel filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024), an addendum to defendant's motion for relief, and a second addendum to defendant's motion for relief. The motion for relief alleged that the State failed to meet its burden that the proof was evident or presumption great that the defendant committed the offenses charged due to the age of the offenses and that the defendant denied the allegations. The motion argued that the State failed to prove that the defendant posed a real and present danger to any person or the community because the evidence presented at the hearing only supported one factor, being the nature and circumstances of the offense. Additionally, the motion alleged that the defendant was on pretrial release in Macon County "without incident" and that the defendant required special medical care due to a kidney transplant. Finally, the motion asserted that the State failed to prove that no condition or combination of conditions would mitigate the defendant's threat because he was already on home confinement in Macon County for a similar offense with no violations, and additional conditions, such as routine inspections, were available.

¶ 21    The first addendum to the motion for relief included the defendant's medical records pertaining to his kidney transplant and subsequent medical care. The second addendum to the motion included appellate cases that counsel planned to cite during the motion hearing.

¶ 22    The matter proceeded to a hearing on the motion for relief on December 10, 2025. Defense counsel initially addressed the first addendum filed and explained to the trial court the nature of the defendant's medical condition and need for necessary medical care. Defense counsel stated

8

that because the defendant lost his employment due to his detention, he also lost his health insurance, so the sheriff's department would have to cover the cost of his treatment and medications. The defendant's medical history also impacted his physical health, which was a factor for the court's consideration.

¶ 23    Turning to additional argument on the motion for relief, defense counsel stated that the defendant was asking the trial court to "rebalance all of the factors that were presented at the last hearing." The defense argued that the State only presented evidence as to the seriousness of the offense, not any of the other factors included in the statute, and that no other factors were present as to dangerousness. Defense counsel argued and relied on several appellate decisions for the proposition that additional factors must be considered when ordering detention, and conclusory statements about dangerousness were not permitted.[2] Defense counsel asserted that the defendant offered "to do anything and everything necessary to ensure that he would be complying" with the trial court's order for pretrial release conditions, and the State did not present any evidence that the defendant would not comply with conditions. The argument regarding compliance with pretrial conditions included mental health evaluation, drug addiction evaluations and treatment, home confinement with electronic monitoring, no contact orders, and to turn over electronic devices.

¶ 24    Defense counsel argued that the most recent offense was four years ago, and there was no indication that the defendant had harassed or contacted the victims. The victims were "now in protective mode" since their family was made aware of the alleged incidents, so there was no specific threat to the victims. Defense counsel said that the trial court needed a "greater bit of detail" and practical analysis when considering dangerousness and the combination of factors.

_____

[2]Defense counsel cited to *People v. Shaffer*, 2024 IL App (4th) 240085-U, *People v. Atterberry*, 2023 IL App (4th) 231028, and *People v. Reamy*, 2024 IL App (2d) 240084-U.

9

¶ 25 When discussing the requirement of a motion for relief and hearing, defense counsel stated, "Of course we all know what's really going on in the appellate courts. They don't want to do any more work than they have to." Further, the reason the parties had "to jump through this hoop" of the hearing was to ensure everything was placed on the record and the trial court had every opportunity to review. Defense counsel asked the trial court to reconsider the defendant's detention and release him with conditions based upon the appellate court cases relied upon and the defendant's willingness to abide by conditions.

¶ 26 Turning to the State's argument in opposition to the motion for relief, the State cited to *People v. Mikolaitis*, 2024 IL 130693, in support of its claim that the State does not need to go through an exhaustive list of every factor present for detention but does have to present the trial court with sufficient evidence to support detention. The State argued that the trial court previously heard the evidence from Detective Morris about the investigation leading to the present cases, his interviews with the two victims in DeWitt County, and his summary of their statements about the offenses committed against them. The motion for relief stated that the defendant denied the allegations against him, but the State said that this was "parsing words a little bit" because the defendant acknowledged having a relationship with both minor victims and a sexual encounter with one of them outside of the county. The trial court had also heard evidence about the defendant's case out of Macon County that alleged similar conduct with a third victim.

¶ 27 The State asserted that the trial court could consider the nature of the charge when determining dangerousness and whether conditions existed that allowed the defendant to remain in the community. The State argued that because the defendant had engaged in grooming behaviors, conditions such as an ankle monitor "cannot sufficiently protect these victims or other

minor victims that might be finding themselves in a similar situation in the community." The State asked for the motion for relief to be denied.

¶ 28 Defense counsel responded that all the evidence provided at the last hearing occurred four to eight years earlier and did not prove that the defendant was a real and present threat. Additionally, counsel stated, "the last four years of great behavior, his lack of record, and his compliance with the Macon County order, actually, in fact, establishes that he's not danger[ous] and that the State, therefore, can't prove by clear and convincing evidence that he is."

¶ 29 The trial court announced that it had considered its notes from the initial detention hearing/preliminary hearing, the pretrial investigation report, the arguments of counsel, and the applicable statutory scheme. As to whether clear and convincing evidence was presented to establish the proof was evident or presumption great that the defendant committed a detainable offense, the trial court stated it considered the interviews with the victims and the specific details they provided about the offenses and where they occurred that is not typically included in fabricated claims. The trial court confirmed its previous finding that the proof was evident or presumption great that the defendant committed the offenses charged.

¶ 30 The trial court next addressed the argument that it only considered the nature and circumstances of the offense charged when determining the defendant presented a real and present threat to any person or the community. The trial court noted that just because the defendant faced serious charges was not a basis to detain the defendant. However, the court found there was "more here" than detaining only on the basis of the offense charged. The court said, "This is a situation that involves multiple alleged victims, with multiple alleged offenses upon those victims in multiple counties over an extended period of time." The trial court also weighed the age and physical condition of the victims and the defendant, and noted the victims were minor children

11

placed in the pastoral care of the defendant, who was in a position of trust, at the time of the alleged offenses. The trial court stated, "[The] Court considers the fact that the alleged victims were, at the time of the offenses, children; that the defendant, at the time of the alleged offenses, was a grown man, albeit a young man, he was a man." Another consideration was that the defendant removed the victims from the presence and safety of their parents and/or the church to commit the offenses. The trial court also considered that the defendant required ongoing medical treatment due to his kidney surgeries but found that no evidence was presented that showed that the defendant was receiving insufficient care while in detention.

¶ 31    Regarding whether any conditions of pretrial release could mitigate the danger the defendant posed, the trial court considered that the defendant was on pretrial release in Macon County. However, the court addressed the fact that the defendant was charged with misdemeanors in the Macon County case and now he faced multiple serious, felony charges which could provide the defendant with "incentive" to contact the victims or manipulate evidence while released. Based on the foregoing considerations, the trial court denied the motion for relief. The defendant appealed pursuant to Illinois Supreme Court Rule 604(h)(1)(iii) (eff. Apr. 15, 2024).

¶ 32                                    II. ANALYSIS

¶ 33    On appeal, defendant filed a notice in lieu of memorandum. As such, his motion for relief serves as his argument on appeal. Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024).

¶ 34    Pretrial release—including the conditions related thereto—is governed by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2024). Upon filing a timely, verified

12

petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-6.1(e), (f) (West 2024). The State or the defendant may present evidence to the trial court by way of proffer based upon reliable information. 725 ILCS 5/110-6.1(f)(2) (West 2024). The trial court may order a defendant detained pending trial if the defendant is charged with a qualifying offense, and the trial court concludes the defendant poses a real and present threat to the safety of any person or the community (725 ILCS 5/110-6.1(a)(1)-(7) (West 2024)) or there is a high likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8) (West 2024)).

¶ 35    Our standard of review of pretrial release determinations is dependent on whether the trial court heard live witness testimony or whether the parties proceeded solely by proffer or submission of documentary evidence. Where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this court stands in the same position as the trial court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. However, where the trial court is asked to consider the testimony of live witnesses, and make factual findings, such as the State's burden of presenting clear and convincing evidence that conditions of pretrial release would not protect any person or the community, that the defendant has a high likelihood of willful flight to avoid prosecution, or that the defendant failed to comply with previously ordered conditions of pretrial release, our review is under the manifest weight of the evidence standard. *Morgan*, 2025 IL

13

130626, ¶ 54. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). Given the live testimony presented at the detention hearing in this matter, we will employ a manifest weight of the evidence standard.

¶ 36 The court is provided a nonexhaustive list of factors it should consider when determining whether a defendant poses a real and present threat to the safety of any individual(s) or the community. Those factors include (1) the nature and circumstances of the offenses charged, including whether they are crimes of violence or involve a weapon; (2) whether the defendant's prior criminal history indicates "violent, abusive, or assaultive behavior, or lack of such behavior;" (3) the identity of any individual to whose safety the defendant may pose a threat and the nature of any such threat; (4) the defendant's age and physical condition; (5) the age and physical condition of the victim or complaining witness; (6) whether the defendant possesses or has access to any weapons; (7) whether the defendant was on probation, parole, or mandatory supervised release when arrested on the underlying charges or any other offense; and (8) any other factor that has a reasonable bearing on the defendant's propensity for violent, abusive, or assaultive behavior (725 ILCS 5/110-6.1(g)(1)-(9) (West 2024)). No one factor is determinative, and the court must base its decision on an individualized assessment. *Atterberry*, 2023 IL App (4th) 231028, ¶ 15 (citing 725 ILCS 5/110-6.1(f)(7) (West 2022)).

¶ 37 Once a court determines that the defendant poses a threat to the safety of any individual or the community, the trial court must determine whether the State has met its burden of proving by clear and convincing evidence what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the

likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2024). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the person;[3] (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. 725 ILCS 5/110-5(a)(1)-(5) (West 2024). The Code lists no singular factor as dispositive. See 725 ILCS 5/110-5(a) (West 2024). The nature and circumstances of the underlying offense is "just one factor to consider in determining whether the threat posed can be mitigated by conditions of release." *People v. Lopez*, 2025 IL App (2d) 240709, ¶ 19.

¶ 38    We have thoroughly reviewed the record on appeal in this matter, including the initial detention hearing and the motion for relief hearing. The defendant was charged in the present case alone, DeWitt County case No. 25-CF-125, with five counts of criminal sexual assault, a Class 1 felony, and two counts of aggravated criminal sexual abuse, a Class 2 felony. Due to the related nature of the cases and testimony, the trial court was also presented with information regarding DeWitt County case No. 25-CF-124, in which the defendant was charged with nine counts of criminal sexual assault and one count of aggravated criminal sexual abuse.

¶ 39    The defense argued that the State did not meet its burden of proving that the proof was evident or presumption great that the defendant committed a detainable offense. During the initial

---

[3]The defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A), (B) (West 2024).

detention hearing, Detective Morris provided summaries of the offenses charged, including the location of each offense and what each victim reported. The defense argued at the hearing that this testimony was just the "bare bones" allegations contained within the charging instruments, but Morris's testimony also included information from the defendant's interview. Specifically, Morris testified that the defendant admitted to having a relationship with both victims, and that he had engaged in sexual acts with H.L. when he believed she was of the age of consent. Morris additionally testified that H.L. informed him that the defendant gifted her items, which she later returned to him, and these items were located in the defendant's home when a search warrant was executed in July 2025. Based on these facts, it was not against the manifest weight for the trial court to find that the proof was evident or presumption great that the defendant committed a qualifying offense.

¶ 40    The defense next argued that the State failed to prove that the defendant posed a real and present danger to any person or the community because it only provided evidence as to the nature and circumstances of the offense, which is one factor under the Code. All the charges in both cases are sex offenses, which the Code explicitly states may be considered when determining dangerousness. See 725 ILCS 5/110-6.1(g)(1) (West 2024).

¶ 41    In addition to the nature and circumstances of the offense, the trial court stated that it considered other factors. These factors included the age and physical condition of the defendant and the victims (725 ILCS 5/110-6.1(g)(5), (6) (West 2024)); that the victims were identified through the investigation, and the defendant posed a threat to their safety (725 ILCS 5/110-6.1(g)(3) (West 2024)); and that the defendant was also on pretrial release for a similar offense at the time of his arrest (725 ILCS 5/110-6.1(g)(8) (West 2024)).

¶ 42    The victims in the concurrent cases were minor children under the pastoral care of the defendant. The defendant used his trusted position to seclude the victims away from their mother, the church, and any other trusted adults to commit sex offenses. The State presented evidence of the defendant's grooming behaviors of H.L., including using online gaming and social media to make contact with her before meeting in person.

¶ 43    The defense argued in his motion for relief and subsequent hearing that because the offenses occurred four to eight years ago, he did not pose a real and present threat to the victims or the community. While time lapsed from when the offenses occurred until the time of the defendant's arrest, this delay does not preclude a finding that the defendant posed a danger to any person or the community. See *People v. Cooke*, 2025 IL App (2d) 250263-U, ¶ 25 ("In any event, while, in certain cases, a lapse of time between an alleged crime and an arrest without further evidence of criminality can be relevant, it certainly does not *preclude* a dangerousness finding.") (Emphasis in original.) See also *People v. Ordonez*, 2025 IL App (2d) 250216-U, ¶¶ 20-25 (finding that a 15-month delay in arresting the defendant was not due to the fact that the defendant did not pose a danger to the community, but rather was delayed to avoid compromising an investigation).

¶ 44    The trial court clearly relied upon factors outside of the nature and circumstances of the offenses themselves. As such, it was not against the manifest weight of the evidence for the trial court to find that the defendant posed a real and present threat to the community or the victims.

¶ 45    The defense asserted that the State failed to prove that conditions or a combination of conditions could not mitigate the threat posed by the defendant. The trial court stated that, in weighing the factors regarding dangerousness and conditions, it considered that the defendant was on pretrial release in Macon County. His conditions included electronic home monitoring with an ankle monitor. The trial court explicitly stated that, although he had not violated the terms of his

17

conditions in that case, the circumstances surrounding this offense were different, involved two victims, and were felony charges rather than misdemeanors. The State also provided evidence that the defendant groomed H.L. through online gaming and social media, correctly noting that electronic monitoring or any other conditions offered would not inform pretrial services if he was grooming any other children in the same manner. Electronic monitoring would not be sufficient to determine if the defendant was near minor children, as it would only provide his location.

¶ 46    Based on these facts, the trial court found that no condition or combination of conditions, including home confinement and electronic monitoring, could reasonably mitigate the danger the defendant posed to the victims and the community. An opposite conclusion is not clearly evident, and the finding itself is not unreasonable, arbitrary, or not based on the evidence presented. Therefore, we find that the trial court's decision to detain the defendant was not against the manifest weight of the evidence. *Morgan*, 2025 IL 130626, ¶¶ 38, 43.

¶ 47                                        III. CONCLUSION

¶ 48    Based on the foregoing reasons, we affirm the trial court of DeWitt County.


¶ 49    Affirmed.